

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
11/21/2011

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GOW MING CHAO and | § | Case No. 11-38131 |
| CHIA CHAO | § | Chapter 11 |
| | § | |
| Debtors. | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION REGARDING THE COURT'S SUA SPONTE CONVERSION OF THIS CHAPTER 11 CASE TO A CHAPTER 7 CASE
[Docket No. 15]

### I. INTRODUCTION

The Court writes this Memorandum Opinion to emphasize that while the legal profession is involved in "the practice of law," this is not a license for neophytes to take on Chapter 11 representation. To do so can lead to unintended consequences of the worst kind.

### II. FINDINGS OF FACT

1. On September 27, 2011, Gow-Ming Chao and Chia Chao (the Debtors) filed a voluntary Chapter 11 petition. [Doc. No. 1].

2. The attorney who signed the petition is Robert Teir (Teir), who is a solo practitioner. [Doc. No. 1].

3. On October 6, 2011, this Court issued its Order Setting Status Conference. [Doc. No. 9]. This is a standard order that this Court issues in all Chapter 11 cases pursuant to 11 U.S.C. § 105(a) and (d)(1)[1]. The purpose of the status conference is, among other things, to assist the undersigned judge in becoming better acquainted with the case and to ensure that the debtors and their counsel are in compliance with the

---

[1] Any reference herein to the Bankruptcy Code is a reference to 11 U.S.C. Moreover, any reference to a section is a reference to a section of the Bankruptcy Code.

1

fundamental requirements of the Bankruptcy Code, the Federal Bankruptcy Rules, and the Bankruptcy Local Rules for the Southern District of Texas. The Court typically conducts its Chapter 11 status conferences within three weeks of the filing of the petition.

4. On October 18, 2011, this Court held the status conference in this case. [Oct. 18, 2011 Hearing at 3:15:22 p.m.] Teir and the Debtors appeared, as did the U.S. Trustee. Additionally, Steven Leyh (Leyh), counsel for Southwestern National Bank (the Bank), also appeared. The Bank holds a lien on seven rental properties owned by the Debtors. [Oct. 18, 2011 Hearing at 3:17:33—3:18:57 p.m.] The Bank also holds a lien on any rents generated from the rental properties. Leyh made it clear at the status conference that the Bank has never consented to the Debtors' use of cash collateral. [Oct. 18, 2011 Hearing at 3:20:47 p.m.] This Court has also issued no orders approving use of cash collateral. [Oct. 18, 2011 Hearing at 3:20:03—3:20:25 p.m.]

5. The testimony of the Debtors at this status conference was, among other things, that:

a) They own seven rental properties in the Houston area [Oct. 18, 2011 Hearing at 3:28:21—3:28:52 p.m.];

b) They did not take credit counseling before filing their bankruptcy petition [Oct. 18, 2011 Hearing at 3:46:25—3:48:17 p.m.];

c) They have not maintained insurance on their rental properties [Oct. 18, 2011 Hearing at 3:49:40—3:49:50 p.m.];

d) They did not close their pre-petition books, records, and financial accounts [Oct. 18, 2011 Hearing at 3:43:01—3:22:31 p.m.],

2

e) They have never established a debtor-in-possession account at any approved financial institution (or, for that matter, at any unapproved financial institution) [Oct. 18, 2011 Hearing at 3:43:01—3:22:31 p.m.];

f) They have collected rents from their tenants since the filing of their Chapter 11 petition [Oct. 18, 2011 Hearing at 3:21:53—3:34:04 p.m.];

g) They have spent some of the rental proceeds that they have collected since the filing of their Chapter 11 petition [Oct. 18, 2011 Hearing at 3:42:32—3:43:19 p.m.]; and

h) Since the filing of their Chapter 11 petition, the Debtors have paid Teir $3,550.00. [Oct. 18, 2011 Hearing at 3:38:06—3:40:17 p.m.][2].

6. Teir represented to this Court at the status conference that he has never prosecuted a Chapter 11 case[3] [Oct. 18, 2011 Hearing at 3:20:27—3:20:28 p.m.];

7. The Court, in reviewing the docket, noticed that no certificate of credit counseling had been filed representing that the Debtors had taken credit counseling prior to the filing of their Chapter 11 petition. Upon questioning by the Court—as to why he would file a Chapter 11 petition without also ensuring that his clients had taken credit counseling—Teir represented that Ms. Chao had told him that credit counseling had

---

[2] Teir did not file any disclosure with this Court that he had received any post-petition payment of funds from the Debtors. His failure to do so violates Bankruptcy Rule 2016(b)(1), which expressly requires disclosure "after any payment . . . not previously disclosed."

[3] Teir apparently had forgotten that he actually had been attorney-of-record in a prior Chapter 11 case. Based upon this Court's later review of the Southern District of Texas Bankruptcy Court docket, Teir was the attorney of record for a debtor-in-possession in one other Chapter 11 case: *In re Joe K Investments, LLC*, Case No. 06-36535. However, his tenure as counsel for this debtor-in-possession was short-lived, as the case was soon dismissed with prejudice due to the abject failure of the debtor to comply with fundamental requirements of the Bankruptcy Code. [Case No. 06-36535, Doc. No. 14].

been taken. Yet, Ms. Chao testified that she had not made any such statement to Teir. [Oct. 18, 2011 Hearing at 3:46:25—3:48:17 p.m.]

8. Based upon all of the information that came to light at the status conference, this Court, sua sponte, decided to immediately convert this Chapter 11 case to a Chapter 7 case. The Bank supported this approach, as opposed to a dismissal of the case. [Oct. 18, 2011 Hearing at 3:49:17—3:50:36 p.m.] The Court then took a recess so that a Chapter 7 trustee could be appointed, and then appear in court to become acquainted with the case and to take possession of the keys to the rental properties. When the Court went back onto the record, at which time the Trustee's attorney made her appearance, Ms. Chao—who obviously had availed herself of the opportunity to confer with Teir about the consequences of the conversion to Chapter 7—then informed the Court that all of the problems that had arisen were due to the inability of her husband and her to comprehend the English language. [Oct. 18, 2011 Hearing at 6:07:28—6:07:50 p.m.] She also informed the Court that her husband and she filed the Chapter 11 petition solely to buy time to pay off the debt associated with one of the rental properties, and that none of the other properties were in jeopardy of being foreclosed upon. [Oct. 18, 2011 Hearing at 3:36:05—3:36:41 p.m.] After making these representations to the Court, she made an oral motion—with her attorney standing beside her at the podium—for this Court to reconsider its ruling converting the case to a Chapter 7. [Oct. 18, 2011 Hearing at 6:07:28—6:09:27 p.m.] The Court informed her that it would not reconsider its ruling. [Oct. 18, 2011 Hearing at 6:11:11—6:12:03 p.m.]

4

## III. CONCLUSIONS OF LAW

**A. Jurisdiction, Venue and Constitutional Authority to Enter a Final Order**

This Court has jurisdiction over this Chapter 11 case pursuant to 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). Additionally, this is a core proceeding under the general "catch-all" language of 28 U.S.C. § 157(b). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") Venue is proper pursuant to 28 U.S.C. § 1408.

An order converting a case from one chapter to another is considered a final order. *See In re Yehud-Monosson USA, Inc.*, Case No. 11-6040, 2011 WL 4578448, at *1 (B.A.P. 8th Cir. Oct. 5, 2011). Therefore, this Court must determine whether it has the constitutional authority to enter the order converting this Chapter 11 case to a Chapter 7 case. *See Stern v. Marshall*, 131 S.Ct. 2594, 180 L. Ed. 2d 475 (2011). The Court concludes that it does have such authority for two reasons.

First, the facts in the case at bar are easily distinguishable from the facts in *Stern*. In *Stern*, the Supreme Court held that the bankruptcy court did not have constitutional authority to enter a final order where the debtor filed a counterclaim against a claimant based entirely upon state law and where that counterclaim did not involve the claims adjudications process. *Id.* at 2618 (noting that when determining whether Congress may bypass Article III, "the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims adjudication process."). In the case at bar, there is no state law issue involved. Rather, the issues concern whether the Debtors have complied with express provisions of the

5

Bankruptcy Code, the Federal Bankruptcy Rules, the Bankruptcy Local Rules for the Southern District of Texas, and the U.S. Trustee Guidelines for Chapter 11 cases. These are all pure bankruptcy issues which involve fundamental compliance in order for the bankruptcy system to properly operate. Accordingly, this Court concludes that it does indeed have the constitutional authority to sign the order converting this Chapter 11 case to a Chapter 7 case. *See In re Turner,* 2011 WL 2708907, at *4 (Bankr. S.D. Tex. July 11, 2011) ("State law has no equivalent to these statutes; they are purely a creature of the Bankruptcy Code. Accordingly, because the resolution of this dispute is not based on state common law… this Court has the constitutional authority to enter a final judgment in this suit pursuant to 28 U.S.C. §§ 157(a) and (b)(1)").

Alternatively, to the extent that any state law is involved—and the Bank's deed of trust lien on the rental properties and the rental proceeds is certainly based upon Texas law—the existence of such state law does not preclude this Court from having the constitutional authority to enter the conversion order. In *Stern,* the Supreme Court discusses a "public rights" exception to the general rule that only an Article III judge may exercise adjudicative authority. *Stern* at 2611-14. The "public rights" exception is not well defined. The Supreme Court has stated that the application of Article III "is guided by the principle that 'practical attention to substance rather than doctrinaire reliance on formal categories should inform application of Article III.'" *CFTC v. Schor,* 478 U.S. 833, 853–54 (1986). In general, the "public rights" exception arises when "Congress selects a quasi-judicial method of resolving matters that could be conclusively determined by the Executive and Legislative Branches, [because] the danger of encroaching on the judicial powers is less than when private rights, which are normally within the purview of the judiciary, are relegated as an initial matter to administrative adjudication." *Id.* Although a public rights dispute may arise between two individuals, "it is still the case that what makes a right

'public' rather than private is that the right is integrally related to particular federal government action." *Stern,* at 2598.

The Chapter 11 case initiated by the Debtors involves the adjudication of rights created under a complex public rights scheme, and therefore it falls within the Bankruptcy Court's constitutional authority. Under *Thomas v. Union Carbide Agricultural Products Co.,* a right closely integrated into a public regulatory scheme, even "a seemingly 'private' right," may be resolved by a non-Article III tribunal "with limited involvement by the Article III judiciary." 473 U.S. 568, 593 (1985). The Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including "the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." *Central Va. Cmty. College v. Katz,* 546 U.S. 356, 363–64 (2006); *see Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71 (1982) (plurality opinion) (noting in dicta that the restructuring of debtor-creditor relations "may well be a 'public right' "). *But see Stern,* at 2614 n. 7 ("We noted [in *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 31, 56 n. 11 (1989)] that we did not mean to 'suggest that the restructuring of debtor-creditor relations is in fact a public right' . . . Because neither party asks us to reconsider the public rights framework for bankruptcy, we follow the same approach here.").

Disputes that are integrally bound up in the claims adjudication process—and thus involve the exercise of the Bankruptcy Court's *in rem* jurisdiction over the estate—are part of the "public rights" exception. *See Stern,* at 2618 (noting that when determining whether Congress may bypass Article III, "the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims adjudication process"). It necessarily

7

follows that disputes over rights created by the Bankruptcy Code itself as part of the public bankruptcy scheme also fall within the "public rights" exception. *See Thomas,* 473 U.S. at 593 (allowing non-Article III adjudication of rights created by a public regulatory scheme). The Bankruptcy Court may enter final orders in these matters.

The conversion of the Debtors' Chapter 11 case to a Chapter 7 case relates solely to a right established by § 1112(b) of the Bankruptcy Code, and it therefore falls within the Court's constitutional authority. Conversion of a case for cause is a very important feature of the Bankruptcy Code, and it is integral to the public bankruptcy scheme. A debtor has a fiduciary duty to his creditors to take the action necessary to pay their claims. *See In re Mooney,* 2002 Bankr.LEXIS 1958 at *25 n. 16 (Bankr. N.D. Tex. Nov. 26, 2002). When a debtor-in-possession violates this fiduciary duty by failing to comply with fundamental requirements of the Bankruptcy Code and Bankruptcy Rules, conversion is an appropriate vehicle for stopping such conduct. Its purpose is, among other things, to prevent a bad-faith or incompetent debtor-in-possession from dissipating property of the estate by having a Chapter 7 trustee take control of this property in order to liquidate the property so as to maximize distribution to creditors of the estate. *See In re Rosson,* 545 F.3d 764, 771-72 (9th Cir. 2008).

Given the need to preserve property of the estate in order to maximize distribution to creditors, this Court concludes that converting this Chapter 11 case to a Chapter 7 case (as opposed to dismissing the case) fits within the "public rights" exception. Conversion protects not just one person or entity, but rather protects all of those persons and entities affected by the filing of the Debtors' bankruptcy petition. *See In re Mitan,* 573 F.3d 237 (6th Cir. 2009). Each of the Debtors' creditors benefit because no other creditor may unilaterally take action to collect the debt owed to it—which means that the Chapter 7 trustee has time to properly administer the

assets of the estate and make distributions on a pro rata basis to creditors holding allowed claims. Stated differently, the existence of, and the benefits provided by, the bankruptcy statute authorizing conversion does *not* constitute a private right of any one specific person or entity, but rather comprises a public right that inures to the benefit of all those creditors involved in the Debtors' bankruptcy. Without the use of the conversion statute, the public policy of maximizing payment of allowed claims would be undermined. Accordingly, because the Court concludes that the matter at bar involves a "public right," the Court concludes that it has the constitutional authority to enter a conversion order in this bankruptcy case.

**B. The Debtors' Violations of the Law**

Rule 4002-1(a) of the Bankruptcy Local Rules for the Southern District of Texas states that "a debtor in possession is responsible for strict compliance with the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and standing orders," and that "Counsel for the debtor-in-possession is responsible for instructing the debtor about the U.S. trustee guidelines for a debtor-in-possession and insuring compliance with those guidelines." Similarly, U.S. Trustee Guideline 6.6 states that the "Debtor shall manage and operate the business of Debtor without risk to the public and in compliance with federal, state, and local law."

In this Chapter 11 case, there is no question that the Debtors were "debtors-in-possession," and that Teir, as "counsel for the debtors-in-possession," violated Local Rule 4002-1 by failing to: (a) instruct the Debtors about the U.S. Trustee Guidelines [Oct. 18, 2011 Hearing at 3:19:28—3:20:25 p.m., 3:44:10—3:44:20]; and (b) ensure their compliance with federal law (i.e. the Bankruptcy Code, Bankruptcy Rules, and U.S. Trustee Guidelines)[4]. For their part, as

---

[4] Aside from his failure to comply with these Local Rules, Teir also failed to comply with Federal Bankruptcy Rule 2016(b)(1) by failing to disclose his post-petition receipt of $3,550.00 from the Debtors.

9

set forth below, the Debtors have failed to comply with many provisions of the Bankruptcy Code, Bankruptcy Rules, and the U.S. Trustee Guidelines as well as Local Rule 4002-1(a):

(1) The Debtors did not take credit counseling before filing their bankruptcy petition. [Finding of Fact No. 5(b)]. They are therefore ineligible to be in a Chapter 11 case and should not have filed their petition[5]. 11 U.S.C. § 109(h)(1); *Wyttenbach v. C.I.R.*, 382 B.R. 726, 728-29 (S.D. Tex. 2008).

(2) The Debtors failed to file a certificate with the Clerk's Office expressly setting forth that they had taken credit counseling before filing their bankruptcy petition. By failing to file a certificate from an approved nonprofit budget and credit counseling agency, the Debtors violated 11 U.S.C. § 109(h)(1); § 521(b)(1); and Bankruptcy Rule 1007(b)(3).

(3) The Debtors failed to maintain insurance on their properties [Finding of Fact No. 5(c)], thus violating U.S. Trustee Guideline 4.4.7.

(4) The Debtors did not close their pre-petition books, records, and financial accounts [Finding of Fact No. 5(b)], which violated U.S. Trustee Guideline 4.4.5.

(5) The Debtors did not open new debtor-in-possession accounts [Finding of Fact No. 5(e)], which violated U.S. Trustee Guideline 4.4.6.

---

[5] Although the Debtors are ineligible to be debtors due to their failure to take credit counseling, this Court nevertheless chose to convert their Chapter 11 case to a Chapter 7 case, rather than to dismiss the case. Thus, the Debtors remain as debtors even though they are ineligible to be debtors due to their failure to have taken credit counseling. Although the applicable statute requires the taking of pre-petition credit counseling to be eligible to be a debtor, the Supreme Court has held that a literal reading of a bankruptcy statute does not prevent a bankruptcy court from exercising its equitable powers in order to prevent a bad-faith debtor from abusing the bankruptcy process to obtain an undue advantage. *See Marrama v. Citizens Bank,* 549 U.S. 365, 375 (2007) (holding that a bad-faith debtor does not have an automatic right to convert from Chapter 7 to Chapter 13 despite the fact that the relevant statute states that "The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time . . . ."). Accordingly, in the case at bar, while the Debtors are ineligible to be in a bankruptcy case, this Court's conversion of their case, rather than a dismissal of their case, is done to prevent them from retaining control of their rental properties in the wake of their complete failure to comply with fundamental provisions of the Code and Rules. To dismiss the case, and thereby allow the Debtors to retain control of their rental properties, would be excusing them for their woeful failure to comply with the Bankruptcy Code and Rules. This, the Court will not do.

(6) The Debtors used the cash collateral from their rental properties without first obtaining permission from this Court or the Bank [Finding of Fact No. 5(g)], thereby violating 11 U.S.C. § 363(c)(2); Bankruptcy Rule 4001(b); Local Rule 4002-1(b), (i); and U.S. Trustee Guideline 6.2. *See, e.g., In re Aerosmith Denton*, 36 B.R. 116, 119 (Bankr. N.D. Tex. 1983) (holding that debtor's unauthorized use of "proceeds collected post-petition from pre-petition receivables constitutes use of 'cash collateral'").

In sum, by failing to fulfill and abide by the six requirements listed above, the Debtors violated no less than twelve provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and U.S. Trustee Guidelines. In and of itself, this conduct is egregious. It is even worse when one considers that the Debtors, as debtors-in-possession, "hold and manage [their] assets as fiduciaries for the estate." *See* Bankruptcy Local Rule 4002-1(b).

## C. Conversion of the Case

### 1. The Grounds for Conversion

11 U.S.C. § 1112(b)(1) governs when this Court must convert a Chapter 11 case to a Chapter 7 case or dismiss the case. *See In re Humble Place Joint Venture*, 936 F.2d 814, 817 (5th Cir. 1990). This section, in pertinent part, sets forth that "…on request of a party in interest…the court shall convert a case under this chapter to a case under chapter 7…for cause . . . .." Section 1112(b)(4) enumerates several factors that constitute "cause," including the following that are particularly applicable to the case at bar:

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
(B) gross mismanagement of the estate;
(C) failure to main appropriate insurance that poses a risk to the estate or to the public;
(D) unauthorized use of cash collateral substantially harmful to 1 or more creditors…
(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter . . . .

*In re Southbelt Props. Mgmt.*, No. 10-80254-G3-11, 2010 Bankr. LEXIS 4180, at *10 (Bankr. S.D. Tex. 2010). Moreover, as observed by the Historical and Statutory Notes appearing after 11 U.S.C. § 1112 (West 1993) at 473-74, "this list is not exhaustive. The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." *Casse v. Key Bank Nat'l Ass'n (In re Casse),* 198 F.3d 327, 334-35 (2d Cir 1995).

### 2. This Court Has Sua Sponte Powers to Convert This Chapter 11 Case to a Chapter 7 Case

As noted above, Section 1112(b)(1) expressly states that "…on request of a party in interest…the court shall convert a case under this chapter to a case under chapter 7…for cause . . . .." This language suggests that for a conversion to occur, a party-in-interest must affirmatively request such relief and that a Court may not sua sponte convert the case.

However, 11 U.S.C. § 105 provides that a bankruptcy court

may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

*See Marrama,* 549 U.S. at 375 n.12. The Fifth Circuit has held that "even otherwise unqualified rights in the debtor are subject to limitation by the bankruptcy court's power under § 105(a) to police bad faith and abuse of process . . . bankruptcy courts are vested with the authority to take appropriate action in response to an abuse of process." *Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647, 658-61 (5th Cir. 2010). Further, the Bankruptcy Code "empowers the bankruptcy court to take sua sponte actions to prevent an abuse of the bankruptcy process." *Neely v. Smith (In re Neely)*, 334 B.R. 863, 872 (S.D. Tex. 2005). Consequently, bankruptcy courts have converted or dismissed cases sua sponte for an abuse of the process. *See, e.g., In re Clark*, 76

12

B.R. 218, 219 (Bankr. S.D. Fl. 1987) (dismissing sua sponte the debtors' cases for failure to file the bankruptcy schedules required by Bankruptcy Rule 1007(b) or the list containing the names and addresses of all creditors required by Bankruptcy Rule 1007(a)(1)); *Southbelt,* at *11 (Bankr. S.D. Tex2010) (converting a Chapter 11 case to Chapter 7 for using cash collateral without court authority); *In re Rosson*, 545 F.3d 764, 775 (9th Cir. 2008) (holding that "the bankruptcy court did not abuse its discretion when it converted the case on its own motion and denied voluntary dismissal."); *Mother African Union Methodist Church v. Conference of AUFCMP Church (In re The Conference of African Union First Colored Methodist Protestant Church)*, 184 B.R. 207, 223 (Bankr. D. Del. 1995) (holding that "the fact that section 1112(b) requires a party or trustee to request dismissal or conversion does not preclude bankruptcy courts from evaluating a Chapter 11 petition and, on its own initiative, dismissing or converting that petition for cause").

In the Chapter 11 case at bar, the Debtors have woefully failed to comply with a number of requirements, thereby violating §§ 109(h)(1), 363(c)(2) and 521(b)(1); Bankruptcy Rules 1007(b)(3) and 4001(b); Bankruptcy Local Rules 4002-1(a), (b), and (i); and U.S. Trustee Guidelines 4.4.5, 4.4.7, 6.2 and 6.6 as established in Part III. B. [Findings of Fact Nos. 5, 7]. Taken as a whole, the Debtors' actions constitute cause under §1112(b)(4)(A), (B), (C), (D) and (F). Because this Court has the sua sponte power to convert a case for cause, this Court has decided that converting this Chapter 11 case to Chapter 7 would serve both the interests of justice and this bankruptcy estate. To dismiss this case would send the wrong message to debtors in general and these Debtors in particular; namely, that there are no material consequences for completely shirking fundamental duties of the Code. A dismissal here would not guarantee payment of any claims because the Debtors would retain control of their rental properties and would have the unfettered right to use the rents generated therefrom in any way

they so desire; whereas, a conversion guarantees payment of claims—in part, if not in whole—because the Chapter 7 trustee will be in control of the rental properties and therefore liquidate them to pay claims. Conversion will therefore satisfy one of the twin pillars of bankruptcy—namely, payment of allowed claims. *See Fin. Sec. Assurance, Inc. v. T–H New Orleans Ltd. P'ship § In re T–H New Orleans Ltd. P'ship)*, 188 B.R. 799, 807 (E.D.La.1995), *aff'd* 116 F.3d 790 (5th Cir.1997). Finally, that the Bank—the one creditor who appeared at the status conference—also supports the conversion is further reason for converting this case rather than dismissing it. [Finding of Fact No. 8].

### D. The Debtors' Ignorance of the Law Does Not Excuse Them From the Consequences of Their Actions

#### 1. The Actions of Teir, as Counsel for the Debtors, Bind the Debtors

The Supreme Court has held that "each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962); *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993); *Lewis v. Weyerhaeuser Co.*, 141 Fed. Appx. 420, 427-28 (6th Cir. 2005) (holding that the appellant "presents no compelling reason to justify departing from the general rule set forth in *Link* that litigants are bound by the actions of their attorneys"). Therefore, when a party voluntarily chooses an "attorney as his representative in the action . . . he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Link*, at 633-34; *see also In re DePugh*, 409 B.R. 84, 107 n.13 (Bankr. S.D. Tex. 2009) (noting that a debtor is bound by the acts of his lawyer-agent). Since "bad legal advice does not relieve the client of the consequences of her own acts . . . The remedy for bad legal advice lies in malpractice litigation against the offending lawyer." *Cannon-Stokes v. Potter*, 453 F.3d 446, 449 (7th Cir. 2006).

In the case at bar, Teir failed to properly advise the Debtors, and the Debtors did not know—or at least claimed that they did not know [Finding of Fact No. 8]—that they needed to comply with the requirements set forth in the Bankruptcy Code, the Federal Bankruptcy Rules, the Bankruptcy Local Rules, and U.S. Trustee Guidelines regarding their Chapter 11 case. Their failure to comply has resulted in this Court's decision to convert their case to Chapter 7. Unfortunately, when the Debtors made the decision to hire Teir as their attorney, in effect, they agreed to be bound by his actions—and inactions. Therefore, the Debtors are responsible for the consequences of Teir's inactions. Specifically, Teir failed to ensure that the Debtors take the following actions: (a) obtain pre-petition credit counseling; (b) deliver to him two certificates of credit counseling (one for Ms. Chao and the other for Mr. Chao) so that he could file these certificates with the Court; (c) close their pre-petition books, records, and financial accounts; (d) open debtor-in-possession accounts; and (e) insure their rental properties. Additionally, Teir either failed to inform the Debtors, or failed to ensure that they understood, that they were not to use the cash collateral from their rental properties without first obtaining an order from this Court or the Bank's consent. Teir's failure to properly advise the Debtors has now led to grave consequences: the Debtors managed to violate no less than twelve provisions in the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, and U.S. Trustee Guidelines. As a result, this Court has converted the Debtors' case to Chapter 7 for cause, so that the Debtors' rental property business was put in a Chapter 7 trustee's control for liquidation. Unfortunate though the circumstances may be, the Debtors, who voluntarily chose Teir as their attorney, may not avoid the consequences of his lack of knowledge about the bankruptcy process and his corresponding failure to properly counsel them and to ensure their compliance with the Code, the Rules, and the U.S. Trustee Guidelines.

### 2. The Debtors' Ignorance of the Law is not a Basis for Relief

Ms. Chao requested this Court to reconsider its ruling after this Court took a recess so that a Chapter 7 trustee could be appointed. [Finding of Fact No. 8]. She based her request on the grounds that her husband and she did not understand their duties as debtors-in-possession. [Finding of Fact No. 8]. Unfortunately for the Debtors, these grounds hold no weight. A debtor's ignorance of the law does not excuse him from the consequences of his actions. *Smith v. Lounsbury (In re Amberjack Interests, Inc.)*, 326 B.R. 379, 394 (Bankr. S.D. Tex. 2005); *see also Cage v. Waite (In re Moye)*, Case No. 07-37770, 2010 Bankr. LEXIS 4172, at *21 (Bankr. S.D. Tex. 2010), *aff'd by Waite v. Cage*, Case No. H-11-1067, 2011 U.S. Dist. LEXIS 57324 (S.D. Tex. 2010). Therefore, "[e]ven parties who proceed pro se are bound by procedural rules and court orders." *In re ANR-Advance Transp. Co.*, 73 Fed. Appx. 183, 185 (7th Cir. 2003) (holding that a debtor's "inability to find an attorney and his ignorance of the law do not excuse his neglect."); *Woodard v. Taco Bueno Rests., Inc.*, 2006 U.S. Dist. LEXIS 89135, at *32 (N.D. Tex. 2006) (finding that "our circuit does not excuse a debtor's ignorance of his duty to disclose.")

In the case at bar, though they had an attorney who should have properly advised them, the Debtors claimed to be unaware of the various provisions with which they needed to comply as debtors-in-possession who had commenced a Chapter 11 case. Because they apparently did not know about them, they failed to comply with those provisions and violated the Bankruptcy Code, Federal Bankruptcy Rules, Bankruptcy Local Rules, and U.S. Trustee Guidelines. Even though it might well have been an honest mistake, the Debtors' ignorance of the law does not entitle them to relief from this Court's order. As the Supreme Court said in *Upton v. Tribilcock*, 91 U.S. 45, 51, 23 L. Ed. 203 (1875):

If ignorance of law was admitted as a ground of exemption, the court would be involved in questions which it were scarcely possible to solve, and which would render the administration of justice next to impossible; for in almost every case ignorance of law would be alleged, and the court would, for the purpose of determining this point, be often compelled to enter upon questions of fact insoluble and interminable.

Accordingly, the Debtors' ignorance of the law does not excuse them from the consequences of the law (i.e. the conversion of their Chapter 11 case to a Chapter 7 case). That is why this Court denied the oral motion of Ms. Chao to reconsider its decision to convert.

### IV. CONCLUSION

In sum, due to Teir's failure to properly advise and ensure compliance by the Debtors, the Debtors violated numerous provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Bankruptcy Local Rules of the Southern District of Texas, and the U.S. Trustee Guidelines. Because of the Debtors' failure to comply with the law, this Court has converted the Debtors' Chapter 11 case to a Chapter 7 case. The Debtors therefore will lose control of their numerous properties, including those properties that were not in jeopardy of being foreclosed upon. Their loss of control of all of these properties is the primary consequence of their failure to comply with the Code and the Rules. Meanwhile, a hearing will be held for Teir to show cause why he should not be sanctioned for his abject failure to fulfill the fundamental duties required of him, as counsel for these Chapter 11 debtors-in-possession. He, like his clients, must be held accountable for his failure to abide by applicable law.

An order consistent with this Memorandum Opinion has already been entered on the docket.

Signed on this 21st day of November, 2011.

_____
Jeff Bohm
United States Bankruptcy Judge